IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT W. MAUTHE, M.D., P.C.,[1] individually and as the representative of a class of similarly-situated persons, *Plaintiff*, v. SPREEMO, INC. and THE HARTFORD FINANCIAL SERVICES GRP., *Defendants.* | : : : : : : : : : : : : | CIVIL ACTION NO. 18-1902 |

## MEMORANDUM

### I. INTRODUCTION

Before the Court is Defendants' Joint Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 24), Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's First Amended Class Action Complaint (ECF No. 27), and Defendants' Joint Reply (ECF No. 29).

### II. BACKGROUND

Plaintiff Robert W. Mauthe, M.D., P.C.[2], filed this putative class action against Defendants Spreemo, Inc. ("Spreemo") and the Hartford Financial Services

---

[1] The Complaint indicates that Plaintiff Robert W. Mauthe, M.D., P.C., is a private medical practice in Center Valley, Pennsylvania. ECF No. 23 at ¶ 7.

[2] In their briefing, Defendants note that Plaintiff Robert W. Mauthe, M.D., P.C. is a serial TCPA filer. This Court finds this fact of no import in deciding each case on its individual merits. Indeed, it is expected and anticipated that consumer protection type legislation will be enforced by individuals such as Plaintiff, who pursue them at every opportunity.

1

Group ("Hartford") alleging Defendants violated the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, by sending advertisements by facsimile ("fax") to Plaintiff and a purported class of similarly-situated persons. ECF No. 23 at ¶ 13. Specifically, Plaintiff alleges that in December 2016 Defendants sent, without its consent, a single one-page fax to Plaintiff. *Id.* at ¶¶ 14 & 47. Plaintiff attached said fax to the Complaint as "Exhibit A."[3] *Id.*, Ex. A. In addition, Plaintiff also brings a conversion claim against Defendants alleging that by sending this fax to Plaintiff's (and the purported class's) fax machines, "Defendants improperly and unlawfully converted the class's fax machines to Defendants' own use" and that in cases where the fax was printed (as in Plaintiff's case), "Defendants also improperly and unlawfully converted the class members' paper and toner [and time] to Defendant's own use." *Id.* at ¶ 60.

Defendants have filed a Joint Motion to Dismiss Plaintiff's First Amended Complaint. For the reasons discussed below, Defendants' Joint Motion to Dismiss will be granted.

---

[3] When reviewing a complaint, the Court should consider not only the allegations in the complaint, but also the exhibits to the complaint. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994). Accordingly, the Court shall consider the fax, attached as Exhibit A to the Complaint, in its ensuing analysis.

## III. Legal Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Following the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), pleading standards in federal actions have shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to allege facts sufficient to show that the plaintiff has a plausible claim for relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).

While Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atlantic*, 550 U.S. 544, the plaintiff must provide "more than labels and conclusions." *Byrne v. Cleveland Clinic*, 684 F. Supp. 2d 641, 649 (E.D. Pa. 2010) (citing *Bell Atlantic*, 550 U.S. 544). A facially plausible claim may not be supported by conclusory allegations, but must allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

3

## IV. Discussion

The TCPA prohibits sending unsolicited advertisements "to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). Thus, the issue here is whether the fax sent to Plaintiff is an advertisement under the TCPA. The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

Generally, there are two ways a fax can violate Subsection 227(b)(1)(C) of the TCPA. First, a fax violates the TCPA if, on its face, it promotes "the commercial availability or quality of any property, goods, or services . . . ." 47 U.S.C. § 227(a)(5); *see Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, No. 12-2132, 2013 WL 486207, at *4-6 (D.N.J. Feb. 6, 2013). Second, even if a fax does not facially promote a good or service, it still violates the TCPA if it is a pretext for a larger advertising scheme. *See, e.g.*, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 FR 25967, 25973 ("[S]urveys that serve as a pretext to an advertisement are subject to the TCPA's facsimile advertising rules.").

Thus, if faxes do not facially "advertis[e] the commercial availability or quality of any property, goods, or services," 47 U.S.C. § 227(a)(5), they must be

proven to be pretextual before TCPA liability can be imposed. *See* FCC Rules and Regulations, 71 Fed. Reg. at 25973. For example, the FCC contrasts faxes promoting free goods or services with informational communications or surveys. An informational communication is one that "contain[s] only information, such as industry news articles, legislative updates, or employee benefit information . . . ." *Id.* Unless the faxes are pretextual, informational messages and surveys do not violate the TCPA. *See id.* (providing guidance on how to determine whether a fax "is a bona fide 'informational communication'" and stating that "any surveys that serve as a pretext to an advertisement are subject to the TCPA's facsimile advertising rules").

The FCC has also expounded upon the difference between an unsolicited advertisement and a non-advertising informational fax: "A non-advertising, informational fax is designed to inform a consumer about a subject without 'advertising the commercial availability or quality of any property, goods, or service.' The Commission also considers the 'primary purpose of the communication.' For example, a company logo or business slogan on an account statement—a '*de minimis* amount of advertising information'—does not convert a communication into an unsolicited advertisement if, for example, the primary purpose is to relay account information to the fax recipient." Rules & Regulations

5

Implementing the Telephone Consumer Protection Act of 1991, 31 F.C.C. Rcd. 13289, 13291.

In the instant case, Defendants jointly purport that the fax at issue could not have violated the TCPA because it is not an unsolicited advertisement as defined by the statute and by the FCC. *See generally*, ECF No. 24. Rather, Defendants claim that the fax is merely informational and simply "informs Dr. Mauthe that Spreemo has been designated by Hartford as its preferred diagnostic provider." *Id.* at pg. 1.

A careful review of the fax reveals that on its face, it neither promotes goods or services, nor seeks to initiate a commercial transaction with Plaintiff. It is true, as Plaintiff contends, that the fax states "that Spreemo is the 'Primary Diagnostic Vendor' for Hartford." ECF No. 23 at ¶ 18. However, Plaintiff is incorrect that the fax "promotes the availability and quality of Spreemo's services." *Id.* It merely, on its face, informs recipients that if they are treating any patients whose treatment is covered by Hartford, that Spreemo has been designated as Hartford's primary diagnostic testing vendor. *Id.* at Ex. A. Indeed, the very language Plaintiff uses to describe the fax validates this conclusion: "Exhibit A **informs** recipients (*i.e.* medical providers such as Plaintiff) that when they are treating patients covered by Hartford insurance policies, Spreemo is Hartford's primary diagnostic testing vendor[;]" "Exhibit A **communicates** to recipients (*i.e.*, medical

providers such as Plaintiff) that if they have a patient covered by a Hartford insurance policy that needs a diagnostic test such as an MRI, they should submit the request for an MRI to Spreemo." ECF No. 23 ¶¶ 39 & 40.

And, as previously determined by the FCC, the fact that the fax includes Spreemo's name, logo, location, and contact information does not convert this informational transmission into an unsolicited advertisement actionable under the TCPA. *See* Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 31 F.C.C. Rcd. at 13291. What is most telling here is what the fax does not include. The fax does not include comparative prices for services. It does not include any touting of quality of services. It does not include the ease of making an appointment or arranging for any services. Those are all things that would take the fax beyond the realm of information and into the actionable realm of advertisement. Accordingly, the fax is not an unsolicited advertisement on its face.

Furthermore, Plaintiff has failed to aver any plausible allegations that the fax at issue is a pretext for a broader advertising scheme that would allow the claims asserted to survive this Motion to Dismiss. As previously discussed, though contact information for Spreemo is included on the fax, it is provided to allow treating physicians to arrange for diagnostic tests for their patients and not for the purpose of informing Plaintiff how to contact Spreemo to make a purchase of a service or good. The TCPA only prohibits faxes "advertising the commercial

7

availability or quality of any property, goods, or services...." 47 US.C. § 227(a)(5). As a matter of law, the fax attached to the Complaint does not contain the necessary components of an "advertisement" necessary to give rise to an actionable claim under the TCPA. Accordingly, Count I is dismissed.

Because Plaintiff's TCPA claim (Count I) is dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's conversion claim (Count II). The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hughes v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (citation omitted). Plaintiff fails to include any argument to support the Court's consideration of Plaintiff's conversion claim should it dismiss the TCPA claim in its briefing. *See generally*, ECF No. 27. The Court, having considered judicial economy, convenience, and fairness to the parties involved, sees no reason to decide the conversion claim in light of the TCPA claim's dismissal. Accordingly, Count II is dismissed as well.

## V. Conclusion

For the foregoing reasons, Defendants' Joint Motion to Dismiss Plaintiff's First Amended Complaint will be granted. An appropriate Order follows.

DATED: 1-28-2019

BY THE COURT:

_____
CHAD F. KENNEY, J.